JOHN VICTORY, Administrator, etc., Respondent, *v.* HENRY J. BAKER et al., Appellants.

So long as the owner of property violates no duty which he owes to others or to the State, he cannot be called in question for the manner in which he uses or manages it; and if, in the lawful exercise of his right to so use it, another is injured, he is not liable.

Plaintiff's intestate, P., a lad eighteen years old, lost his life by falling into a vat of boiling liquid in defendants' saltpeter factory where he had gone by direction of his employer to pay a bill due one of the defendants. In the factory were a large number of vats and tanks. The vat into which the deceased fell was at one side and under a passageway nine feet wide at the angle of its intersection with another leading to defendants' office. There was an opening to the vat, in the floor, closed by a cover, which was removed at the time of the accident. A sky-light was directly over the passageway at this point, making it very light in the daytime. The deceased did not enter the factory at the usual entrance, but crossed an adjoining lot and canal, climbed a fence and entered by a back door, and, in passing along the passage to the office, fell into the vat. Defendants' workmen were in the habit of entering the factory in the same way P. did, and occasionally others did so also. On each of the doors in front was a sign "no admittance" save one where the sign was "no admittance except on business," at which a person was usually in attendance to admit persons to the factory. In an action to recover damages, *held*, that defendants were not liable; that P., if not a trespasser, was, at most, in the factory by defendants' sufferance, and took the risks attendant upon being there in the condition in which the factory was; that no duty rested upon defendants to guard the vat for the protection of the deceased.

(Argued November 17, 1876; decided November 28, 1876.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for alleged negligence causing the death of Peter Victory, plaintiff's intestate. The facts appear sufficiently in the opinion.

Statement of case.

*Jno. E. Parsons* and *Sidney V. Lowell* for the appellants. Whatever negligence or carelessness there was on the part of the deceased (*Reynolds* v. *N. Y. C. R. R. Co.*, 58 N. Y., 248; *Nicholson* v. *Erie R. Co.*, 41 id., 525; *Dougan* v. *Champ. Tr. Co.*, 56 id. 1; *Brush* v. *Brainard*, 1 Cow., 78; *Roulston* v. *Clark*, 3 E. D. S., 366; *Murray* v. *McLean*, 57 Ill., 385; Whart. on Neg., § 552; *Zolbisch* v. *Tarbell*, 10 Al., 385; *Wilkinson* v. *Fairrie*, 7 L. T. [N. S.], 599; *Grippen* v. *N. Y. C. R. R. Co.*, 40 N. Y., 34; *Wilds* v. *H. R. R. R. Co.*, 24 id., 430; *Johnson* v. *H. R. R. R. Co.*, 20 id., 65; *Weber* v. *N. Y. C. and H. R. R. R. Co.*, 58 id., 451; *Paddock* v. *N. E. R. Co.*, 18 L. T. [N. S.], 60; *Bolsh* v. *Smith*, 7 H. & N., 736). It was error to submit the case to the jury. (*Baulec* v. *N. Y. and H. R. R. Co.*, 59 N. Y., 356; *Toomey* v. *R. Co.*, 3 C. B. [N. S.], 148; *Colton* v. *Wood*, 8 C. B., 568; *Avery* v. *Bowden*, 6 E. & B., 973, 974; *McMahon* v. *Lennard*, 6 H. of L. Cas., 970, 993.)

*S. D. Morris* for the respondent. Defendants were guilty of negligence. (S. & R. on Neg., 501, §§ 498, 508; Whart. on Neg., § 826, 349; *Chapman* v. *Rothwell*, 1 E. B. & E., 168; *Shoelbottom* v. *Egerton*, 18 L. T., 364, 889; *Inderman* v. *Dawes*, L. R., 2 C. & P., 311; 59 N. Y., 32.) There was no contributory negligence on the part of the deceased. (Stark. on Ev., 872 [8th Am. ed.]; *Ingram* v. *Watkins*, 1 D. & B. [N. C.], 442; *Mercer* v. *Wright*, 3 Wisc., 645; *Roth* v. *Wells*, 29 N. Y., 471; *State* v. *Jin*, 1 Den. [N. C.], 508; *State* v. *Pearce*, 1 J. L. [N. C.], 251; *State* v. *Williams*, 2 id., 257; *Walkins* v. *Earle*, 44 N. Y., 182; *People* v. *Evans*, 40 id., 5; *Brett* v. *Catlin*, 47 Barb., 404; *The Santissima Trinidad*, 7 Wheat., 335.) The court properly refused to direct a verdict for defendants. (*Thurber* v. *H., B., M. and R. R. Co.*, 60 N. Y., 326; *Weber* v. *N. Y. C. R. R. Co.*, 58 id., 455; *Sheehy* v. *Burger*, 62 id., 558; *Belton* v. *Baxter*, 58 id., 411; *Sheehan* v. *Edgar*, id., 631; *Filer* v. *N. Y. C. R. R. Co.*, 59 id., 351; *Hackford* v. *N. Y. C. R. R. Co.*, 53 id., 654; *Spooner* v. *Bkln. City R. R. Co.*, 54 id., 230; *Gillespie*

v. *City of Newburgh,* id., 468; *Moody* v. *Osgood,* id., 493; *Colegrove* v. *N. Y. H. R. R. Co.,* 20 id., 492; *Heycroft* v. *L. S. and M. S. R. Co.,* 2 Hun, 489; N. Y. Weekly. Dig., Mch. 27, 1876.)

ANDREWS, J. The ownership of real or personal property carries with it to the owner the right to enjoy, use and manage it in any way he pleases, subject only to restrictions imposed by law or by the duty which he owes to third persons. It cannot be an absolute right else the right of property would be free from all control by the municipal law, and it must be exercised in view of the legal rights of others in order to preserve the rights of all. But so long as the owner violates no duty which he is under to others or to the State, he cannot be called in question for the manner in which he chooses to use or appropriate his property; and if, in the lawful exercise of his right, and without negligence on his part, a third person sustains an injury from its use by the owner, the owner is not answerable.

The plaintiff's intestate lost his life by falling into a vat of boiling liquid in the factory of the defendants where he had gone, by direction of his employer, to pay a bill which the employer owed one of the defendants. For this casualty the defendants are not liable, unless having this vat in the condition and at the place where it was, was, under the circumstances and as to the deceased, a negligent act which caused his death. We are of opinion that the action, in point of the defendants' negligence, is not sustained. They had erected on their own premises a factory for the manufacture of saltpeter and other articles in which they had placed a large number of vats and tanks to be used in the business. The vat into which the deceased fell, was situated on one side of and under a passageway about nine feet wide at the angle formed by the intersection of this passageway with another at right angles to it, leading to the laboratory and office of the defendants. The vat was about five feet in diameter with an opening over it in the floor twenty inches square, which was closed by a cover fitting into the opening

and resting on the timbers under the floor. There was a skylight directly over the passageway making it very light, and there was nothing to prevent persons passing there in the day time seeing the vat, although at times the vision was somewhat obscured by the steam arising from the vats and tanks in the room. There was ample room on one side of the opening for persons to pass, and the passageway and vat had been in use for more than eight years and no accident had happened before the one in question. The deceased was a lad eighteen years of age and went to the factory on the errand mentioned about nine o'clock in the morning. He did not enter at the usual entrance, but crossed a lot adjoining the factory on the south, to a canal which bounded the defendants' premises on the east, and he then passed on the string-piece of the canal around a fence which extended to the canal on the south line of the defendants' lot to the rear of their premises and entered the factory by the back door, and in going along the passage mentioned on his way to the office, slipped or fell into the vat. The day was bright. The vat was at the time wholly or partially uncovered, and the evidence is conflicting as to whether any steam was issuing from it. The workmen of the defendants were accustomed to go to and from the factory by climbing around the end of the fence on the canal at the point where the deceased came upon the premises, and occasionally other persons entered the same way, but the usual and proper entrance was at the front of the building, and on all the doors in front was a sign "no admittance," except that on one there was a sign "no admittance except on business." A person was usually in attendance at this door to admit persons coming to the factory.

Upon the facts proved we are of opinion that no liability was established against the defendants. The defendants were pursuing a lawful business on their own premises, and they had arranged their factory, and the vats, tanks and passageways to suit their own convenience. They had lighted the passageway where the vat was, into which the deceased fell, and had guarded the usual entrance to the factory by signs

and otherwise, so that they should have notice when persons entered the premises. The deceased was not in the factory by their invitation, express or implied. He was not there upon the business of the defendants, but upon the business of his employer. He entered by a way not intended to be used as an entrance to the factory, and although the workmen and occasionally other persons used it, it was in disregard of the manifest intention of the defendants, as indicated by the fences and other arrangements of the property

It is not necessary to say that the deceased was a trespasser, but at most he was there by the sufferance of the defendants, and he took the risks, attendant upon his being in the factory in the actual condition in which it was.

A man may make an excavation on his own land, and leave it unguarded without incurring any liability to persons passing over the land with his license or permission, who may be injured by falling into it. (*Houersell* v. *Smyth*, 7 C. B. [N. S.], 729; *Balch* v. *Smith*, 7 H. & N., 706.) If the owner places a spring gun on his premises, or does other like act imminently dangerous to human life, and designed to endanger it, he may be held responsible even to a trespasser, but the facts in this case do not bring it within the principle upon which the liability in the case supposed rests. So also where one allows a dangerous place in the nature of a trap, to exist on his premises, he will be responsible for an injury caused thereby to persons who, by his invitation, express or implied, go thereon. The case of a customer who goes to trade at a store, or of a guest at an inn, are examples where the relation between the parties imposes a duty to make his premises reasonably safe for those who by his invitation enter them. (*Chapman* v. *Rothwell*, 1 El., B. & El., 168; *Indermaur* v. *Dames*, 1 L. R., Com. Pl., 274,; S. C., 2 id., 311.)

Under the circumstances in this case, no duty rested upon the defendants to guard the vat, or do any other act for the protection of the deceased. They were using their premises in the usual and customary way, and we are of opinion that

there was a failure to show any duty violated by the defend-
ants, or any negligence which will sustain this action.

In this view it is not necessary to consider the question of
contributory negligence.

The judgment should be reversed and new trial granted.

All concur.

Judgment reversed.